**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RODA DRILLING COMPANY,** ) | |
| ) | |
|       **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 08-CV-0684-CVE-PJC |
| ) | |
| **ZAVANNA, LLC; ZENERGY, INC.,** ) | |
| **f/k/a Zinke & Trumbo, Inc.; ZENECO, INC.** ) | |
| **f/k/a RZ Inc.; and PALACE EXPLORATION** ) | |
| **COMPANY,** ) | |
| ) | |
|       **Defendants.** ) | |

**OPINION AND ORDER**

Now before the Court are Defendant Zavanna, LLC's Motion to Dismiss and Brief in Support (Dkt. ## 35, 36), Defendant Palace Exploration Company's Motion to Dismiss (Dkt. # 42), Defendant Palace Exploration Company's Motion to Dismiss Cross Claim of Defendants Zenergy, Inc. and Zeneco, Inc., and Brief in Support (Dkt. # 46), Defendant Zavanna, LLC's Motion to Dismiss Cross Claim of Defendants Zenergy, Inc. and Zeneco, Inc. and Brief in Support (Dkt. # 47), Defendant Zavanna, LLC's Combined Motion to Dismiss Action Pursuant to Rule 12(b)(1) and Brief in Support (Dkt. # 75) , and a Motion by Plaintiff RoDa Drilling Company to Strike New Matters Raised by Palace in Palace's Reply Brief Directed at Zenergy and Brief in Support (Dkt. # 81).

**I.**

RoDa Drilling Company is a general partnership, the partners of which are RoDa, LLC, a Delaware limited liability company, and The Roland and Dawn Arnall Living Trust. RoDa Drilling Company, RoDa LLC, and The Roland and Dawn Arnall Living Trust (collectively, RoDa) are

alleged to be citizens of California.[1] Zavanna, LLC (Zavanna)[2] is a limited liability company organized under the laws of Colorado. Zenergy, Inc. (Zenergy), formerly known as Zinke & Trumbo, Inc., and Zeneco, Inc. (Zeneco), formerly known as RZ, Inc., are incorporated under the laws of, and have their principal places of business in, Oklahoma. Finally, Palace Exploration Company (Palace) is organized under the laws of Oklahoma, with its principal place of business in New York. This action concerns the parties' rights and obligations with respect to certain oil and gas leases in North Dakota. Dkt. # 2. Specifically, the controversy involves the terms and provisions of, and the parties' rights and obligations under, a Participation Agreement (the Agreement) entered into on April 28, 1999. Id. Zavanna, Zenergy, and Palace were signatories to the Agreement. Id.

RoDa is not a party to the Agreement, but contends that it is an interested party "by virtue of its acquisition of an interest in the North Dakota properties."[3] Id. at 2. RoDa's dispute, at

---

[1] The Tenth Circuit has not specifically ruled on the citizenship of a limited liability company for the purposes of determining diversity jurisdiction. However, other circuits have uniformly held that a limited liability corporation is a citizen of any state of which its members are citizens; it is not a citizen of the state in which it was organized, unless one of its members is a citizen of that state. Camico Mut. Ins. Co. v. Citizens Bank, 474 F.3d 989, 992 (7th Cir. 2007); Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C., 374 F.3d 1020, 1022 (11th Cir. 2004)("The federal appellate courts that have answered this question have all answered it in the same way: like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen."); Handelsman v. Bedford Village Associates Ltd. Partnership, 213 F.3d 48, 51-52 (2d Cir. 2000); Hale v. MasterSoft Intern. Pty. Ltd., 93 F. Supp.2d 1108, 1112 (D. Colo. 2000). The complaint does not allege the citizenship of each of the members of the limited liability corporation. Plaintiff is given ten days from the filing of this opinion and order to file an amended complaint alleging the citizenship of the natural persons who comprise RoDa, LLC.

[2] Plaintiff is similarly directed to amend the complaint to allege the citizenship of the natural persons who comprise Zavanna, LLC.

[3] The parties have represented that the transfers of interest, which are the subject of another lawsuit, are nearly complete.

2

present, is with defendant Zavanna only. However, RoDa names Zenergy, Zeneco, and Palace as defendants because their rights will potentially be affected by the resolution of this matter.

Zavanna was one of two interest owners in certain oil and gas properties, known as the Nesson Play, located in North Dakota. Id. at 3. In March 1999, Zavanna wanted to purchase the remaining interest in the Nesson Play, but lacked the financial means to do so. Zavanna sought an investor, and prepared promotional materials offering a 70% net interest in the Nesson Play, for a price of $3,085,000. Id. at 3. Zavanna was acquainted with Zenergy, a Tulsa-based oil and gas company with experience in operating oil and gas properties. Id. Zavanna contacted Zenergy and explained that Zavanna was seeking additional participants to invest in the Nesson Play property. Id. Zenergy knew that Richard Siegal, the owner of Palace, was actively seeking oil and gas investment opportunities. Id. Zenergy introduced Siegal to Zavanna's president, William L. Coleman. Id. Coleman and Siegal reached a verbal agreement that Palace would purchase a 70% interest in the Nesson Play. Id. at 3-4. They also agreed to an Area of Mutual Interest, in which they would share future leasing opportunities on a 70/30 basis. Id. at 4. In addition, Zavanna and Palace agreed that Zenergy would be hired as the contract operator. Id.

Palace and Zavanna agreed that, as between the parties to the Agreement, the party with the largest percentage of the working interest would be the named operator. Id. at 5. With this agreement, Palace and Zavanna were assured that if a non-party to the Agreement ever acquired a majority of the working interest, the status of named operator would continue to be held by a party bound by the Agreement. Id. The Agreement was signed in Tulsa by Palace, Zavanna, and Zenergy on or about April 28, 1999. Id. Zenergy was asked to sign the Agreement, even though it held no working interest, in order to memorialize Zenergy's role as contract operator. Id.

The Agreement also incorporated by reference provisions of a Joint Operating Agreement (JOA). Id. Article 6 of the Agreement provides that, in the event that Palace conveys a portion of its interest to a third party and its interest falls below 30%, Palace will be deemed to have resigned as the named operator, and Zavanna will become operator. Id. at 6.

In 2002, Richard Siegal entered into an agreement with Roland Arnall for Arnall to acquire interests in oil and gas properties owned by Siegal. Id. at 7. Arnall would hold the interest in an investment vehicle to be known as "RoDa." Id. Under the terms of this agreement, RoDa purchased oil and gas interests held by Palace, but Palace held legal title in trust on RoDa's behalf. Id. On or about April 13, 2005, the parties amended the Agreement to include Zeneco, which had acquired a 3.5% interest in the Nesson Play. Id. at 8. RoDa alleges that Palace, because of the arrangement between RoDa and Palace, signed the amendment on RoDa's behalf. Id.

On or about January 29, 2007, Zavanna notified Palace that Article 6 of the Agreement had been triggered by Palace's transfer of interest to RoDa, and that Zavanna was now the named operator. Id. at 9. RoDa alleges that Zavanna intends to install a number of electrical submersible pumps (ESPs) at a total estimated cost of $600,000. Id. at 11. Zavanna alleges that, pursuant to the JOA, the operator is precluded from taking any unilateral action with regard to "remedial work," such as the installation of ESPs. Dkt. # 36, at 4. Moreover, under the JOA, a non-consenting party will not bear any of the associated expenses from proposed operations that are permitted to be undertaken without the consent of all parties. Id.

Finally, Zenergy submitted a proposal, which RoDa supported, to convert a non-commercial well (the Bratton Well) into a saltwater disposal well. Dkt. # 2, at 12. RoDa alleges that Zavanna contests the parties' right to convert the Bratton Well into a saltwater disposal well. Id.

RoDa seeks the following declaratory relief: (1) a determination that Zavanna is not the current named operator under the Agreement; (2) reformation of the Agreement; and (3) a declaration that the Bratton Well may be converted into a saltwater disposal well pursuant to the terms of the Joint Operating Agreement. In its cross-claim, Zenergy[4] incorporates RoDa's claims for relief, and specifically seeks a declaration that, if Zavanna is the named operator, it cannot unilaterally terminate Zenergy as contract operator. Dkt. # 39.

## II.

When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations . . . . In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03.

When ruling on a factual attack to the complaint, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional

---

[4] The cross-claim is asserted by Zenergy and Zeneco (collectively, Zenergy).

5

facts" without converting the motion into a motion for summary judgment. Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003) (district court had authority to review evidence outside the pleadings on issue of exhaustion of administrative remedies without converting the defendant's motion to dismiss into a motion for summary judgment). To defeat the defendants' Rule 12(b)(1) motions, "plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).

For a federal court to have diversity jurisdiction, there must be complete diversity of citizenship, and the amount in controversy must exceed $75,000. 28 U.S.C. § 1332(a). A plaintiff who wishes to be in federal court must allege an amount in controversy in excess of $75,000, unless the defendant is able to prove "to a legal certainty" that the plaintiff cannot recover the alleged amount. See McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008). The burden is on the plaintiff to prove that it does not appear, to a legal certainty, that it cannot recover the jurisdictional amount. Woodmen of World Life Ins. Soc'y v. Manganaro, 342 F.3d 1213, 1216 (10th Cir. 2003). The legal certainty standard is "very strict," and "[a]s a result, it is difficult for a dismissal to be premised on the basis that the requisite jurisdictional amount is not satisfied." Id. "Generally, dismissal under the legal certainty standard will be warranted only when a contract limits the possible recovery, when the law limits the amount recoverable, or when there is an obvious abuse of federal court jurisdiction." Id. at 1217 (citation omitted).

Where plaintiff seeks declaratory and injunctive relief, "the amount in controversy is measured by the value of the object of the litigation." Lovell v. State Farm Mut. Auto. Ins. Co., 466

6

F.3d 893, 897 (10th Cir. 2006) (citing Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). The Tenth Circuit follows the "either viewpoint rule," and the district court may consider either the value of the object of the litigation to the plaintiff or the cost to defendant of injunctive and declaratory relief to determine the amount in controversy. Id. (citing Justice v. Atchison, Topeka and Santa Fe Ry. Co., 927 F.2d 503, 505 (10th Cir. 1991)).

With regard to diversity of citizenship, pursuant to 28 U.S.C. § 1332(a), the citizenship of all defendants must be different from the citizenship of all plaintiffs. McPhail, 529 F.3d at 951. Generally, a district court may exercise ancillary jurisdiction over a cross-claim where complete diversity does not exist between the cross-claim plaintiff and the cross-claim defendants. See Sandlin v. Corporate Interiors, Inc., 972 F.2d 1212, 1215-16 (10th Cir. 1992). A court should attempt to discern the parties' actual interests, and the court cannot determine whether complete diversity exists until the parties are aligned to match their actual interests. Symes v. Harris, 472 F.3d 754, 761 (10th Cir. 2006) (citing City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69-70 (1941)).

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." Id. (citations omitted). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. For purposes

7

of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. Id. at 555-56; Alvarado v. KOB-TV, L .L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002). However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1109-10 (10th Cir. 1991).

### III.

Defendants Zavanna and Palace both raise the following arguments in support of their motions to dismiss RoDa's claims: (1) the amount in controversy requirement is not met and (2) there is no complete diversity of citizenship if the parties are correctly aligned. Zavanna and Palace also move to dismiss Zenergy's cross-claims. They both argue that (1) Zenergy fails to allege an independent basis for subject matter jurisdiction and (2) if the parties were properly aligned, diversity would be destroyed.[5] The motions to dismiss RoDa's claims and the motions to dismiss Zenergy's cross-claims on the basis of subject matter jurisdiction will be addressed jointly.

**A.   Amount in Controversy**

Zavanna and Palace contend that RoDa cannot meet the jurisdictional amount in controversy requirement. Zavanna and Palace argue that, if Zavanna were to become operator, it would not be permitted to take any unilateral action with respect to ESPs under the terms of the JOA. Thus, RoDa

---

[5]   Palace also moves to dismiss Zenergy's cross-claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Those arguments will be addressed separately. See Part IV infra.

8

could prevent Zavanna from installing the ESPs, and would not suffer any resulting damages on that basis.

The burden is on RoDa to show that defendant cannot prove to a "legal certainty" that the amount in controversy requirement is not met. See McPhail, 529 F.3d 953. RoDa offers several arguments in support of its contention that defendants cannot prove to a legal certainty that the jurisdictional amount is not met. First, RoDa argues that it is not a party to the JOA and, thus, would be unable to prevent Zavanna from installing ESPs. Thus, defendants' argument that plaintiff cannot meet the amount in controversy requirement is not "legally certain." RoDa also argues that the operator receives substantial monthly compensation for its work and, accordingly, the determination of who is the rightful operator under the Agreement has an intrinsic value that exceeds $75,000. Finally, RoDa contends that contractually agreed upon attorney fees may be included in the amount in controversy, and the attorney fees here are anticipated to exceed $75,000.

Although Zavanna and Palace raise a factual scenario where RoDa would not be able to reach the jurisdictional amount, RoDa has shown that defendants have not proven to a legal certainty that the amount in controversy is not met. Legal certainty is a strict standard and there is no evidence that recovery here is contractually or legally limited, nor is there anything in the record to suggest that plaintiff is obviously abusing federal court jurisdiction. See Manganaro, 342 F.3d at 1217. Accordingly, the motions to dismiss RoDa's claim on the basis of jurisdictional amount are denied. **B.     Diversity of Citizenship**

Defendants Zavanna and Palace allege that Zenergy should be realigned as a party plaintiff to reflect its real interest in the litigation and, if Zenergy were properly aligned, diversity would be destroyed. Zavanna and Palace further allege that RoDa and Zenergy have colluded to create

9

diversity jurisdiction when, if the parties were correctly aligned, such jurisdiction would not exist. In support of this argument, Zavanna points to the fact that RoDa and Zenergy seek the same relief, Zenergy adopted RoDa's allegations in their entirety, and RoDa does not have a dispute with Zenergy. With regard to Zenergy's cross-claims, Zavanna and Palace argue that Palace and Zenergy both have Oklahoma citizenship and there is no complete diversity between them. Thus, subject matter jurisdiction is based on solely RoDa's primary claim. Zavanna and Palace argue that if the parties were realigned with regard to RoDa's claim, diversity over the primary claim would be destroyed. The realignment argument relates to both the primary and cross-claims, which will be addressed together.

To determine whether realignment is appropriate, the Court must follow Tenth Circuit precedent, which calls for an examination of the parties' "actual interests." See Symes, 472 F.3d at 761; Maljanar Oil & Gas Corp. v. Malco Refineries, 155 F.2d 673, 675-76 (10th Cir. 1946) (examining the facts of the case to determine whether the parties could establish a "community of interest"). Although the Court may examine affidavits and other evidence in deciding whether to grant a factual attack on subject matter jurisdiction, this is a complex and contentious oil and gas matter with an extensive history. There are numerous documents, contracts, agreements, and amendments to agreements. Some of the entities involved with this case have changed names or transferred their interests to other entities, making it difficult to determine which entities may have the same "actual interests." The parties have yet to conduct discovery, where it can be anticipated that counsel for the various parties will obtain deposition testimony and other evidence as to the parties' actual interests. Accordingly, at this stage of the litigation, the Court cannot clearly ascertain the actual interests of Zenergy and RoDa, and is not prepared to realign the parties.

Nonetheless, because the Court has an on-going duty to evaluate subject matter jurisdiction, this issue may be raised again at a later time. Defendants' motions to dismiss the claim and cross-claim on the basis of subject matter jurisdiction are denied.

## IV.

Finally, Palace argues that Zenergy's cross-claims should be dismissed for failure to state a claim upon which relief may be granted. Palace also contends that Zenergy's claim for reformation of the Agreement, to the extent that the reformation is based on "mutual mistake," is time-barred. In support of its motion to dismiss, Palace contends that Zenergy cannot state a claim upon which relief can be granted because the Agreement does not explicitly contain any provision under which Zenergy would be entitled to relief, and Zenergy would be unable to introduce any evidence outside the Agreement because it would be barred from doing so by the parol evidence rule.[6] However, the Court finds that Zenergy, in its cross-claim, has stated a claim for relief which is plausible on its face, see Twombly, 550 U.S. at 555, and any arguments with regard to the parol evidence rule are premature. Palace's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

With regard to the statute of limitations, Palace argues that, to the extent that Zenergy claims that the Agreement should be reformed due to "mutual mistake," the claim is time barred. A district court may dismiss a claim on the ground of statute of limitations pursuant to Fed. R. Civ. P. 12(b)(6) when it is clear from the face of the complaint that the claim is time barred. See Cosgrove v. Kansas

---

[6] The parol evidence rule generally prohibits the admission of "extrinsic evidence of prior or contemporaneous oral agreements, or prior written agreements, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous, integrated writing." See RICHARD A. LORD, 11 WILLISTON ON CONTRACTS § 33:1 (4th ed. 2009).

Dept. of Social and Rehabilitation Services, No. 08-3101, 2009 WL 1546148, at *2 (10th Cir. June 4, 2009) (unpublished decision) (holding that a claim may be dismissed as time barred "when the dates given in the complaint make clear that the right sued upon has been extinguished") (citing Aldrich v. McCulloch Props., Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

Palace states that the relevant statute of limitations period for a contract action is three years under Colorado law and five years under Oklahoma law, running from the time the cause of action accrues.  See COLO. REV. STAT. § 13-80-101; OKLA. STAT. tit. 12, § 95(A).  A cause of action for contract reformation accrues at the time the party making the claim discovered or should have discovered the grounds for reformation.  See, e.g., Murry v. GuideOne Specialty Mut. Ins. Co., 194 P.3d 489, 491 (Colo. Ct. App. 2008); Overholt v. Indep. School Dist. No. 2, 852 P.2d 825-26 (Okla. Civ. App. 1993).  However, there is a question of fact as to when Zenergy knew or should have known that the Agreement contained a mutual mistake.  Zenergy alleges that it could not have discovered the grounds for reformation any earlier than January 29, 2007, when Zavanna asserted that Article 6 of the Agreement was triggered, Zavanna would be the new named operator, and Zenergy would no longer be the contract operator.  Assuming all factual allegations in the cross-claim are true, and construing all inferences in favor of Zenergy, it is far from clear from that Zenergy's claims are time barred.  Accordingly, Palace's motion to dismiss on the ground of statute of limitations is denied.[7]

---

[7] Because the Court denies Palace's motion to dismiss Zenergy's cross-claim, the Motion by Plaintiff RoDa Drilling Company to Strike New Matters Raised by Palace in Palace's Reply Brief Directed at Zenergy and Brief in Support (Dkt. # 81) is moot.

**IT IS THEREFORE ORDERED** that Defendant Zavanna, LLC's Motion to Dismiss and Brief in Support (Dkt. ## 35, 36), Defendant Palace Exploration Company's Motion to Dismiss (Dkt. # 42), Defendant Palace Exploration Company's Motion to Dismiss Cross Claim of Defendants Zenergy, Inc. and Zeneco, Inc., and Brief in Support (Dkt. # 46), Defendant Zavanna, LLC's Motion to Dismiss Cross Claim of Defendants Zenergy, Inc. and Zeneco, Inc. and Brief in Support (Dkt. # 47), and Defendant Zavanna, LLC's Combined Motion to Dismiss Action Pursuant to Rule 12(b)(1) and Brief in Support (Dkt. # 75) are **denied**.

**IT IS FURTHER ORDERED** that the Motion by Plaintiff RoDa Drilling Company to Strike New Matters Raised by Palace in Palace's Reply Brief Directed at Zenergy and Brief in Support (Dkt. # 81) is **moot**.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint within 11 days from the filing of this Opinion and Order alleging the citizenship of the natural persons who comprise RoDa, LLC and Zavanna, LLC.

**IT IS FURTHER ORDERED** that the motion for modification of scheduling order dates and request for expedited consideration (Dkt. ## 93, 94) are **granted**. An amended scheduling order will be entered.

**DATED** this 26th day of June, 2009.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT